IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRENT FAZEKAS, | ) | CASE NO.: 1:17 CV 982 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| GREGORY TRUCKING, INC. | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion of Defendant Gregory Trucking, Inc. for Summary Judgment. (ECF #25). For the reasons that follow, Defendant's Motion for Summary Judgment is denied.

## FACTS[1]

Plaintiff Brent Fazekas, filed this action on May 9, 2017 against his former employer Gregory Trucking, Inc., alleging claims of Race Discrimination/Hostile Work Environment pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq* and Ohio Rev. Code §§ 4112.02 and 4112.99 (Counts I and II) and Retaliation in violation of Title VII (Count III) and Ohio Rev. Code §§ 4112.02(I) and 4112.99 (Count IV).

Plaintiff was hired by Defendant Gregory Trucking as a truck driver on or about June 8, 2015 and was laid off due to a seasonal decline in business on January 7, 2016. (K. Ennes Dep. ¶¶ 9, 12-13, 21). Several other truck drivers were laid off during the cold months as well. (K.

---

[1] Except as otherwise cited, the factual summary is based on the Complaint and the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

Ennes Dep. ¶¶ 13-22). The lay off notice received by Plaintiff indicated that his estimated recall date was March 21, 2016. However, on March 21, 2016 Plaintiff received a letter stating that Gregory Trucking had decided not to recall him and was instead terminating his employment effective March 21, 2016. (ECF #25-3).

Plaintiff states that he is African American[2] and that he was subjected to racial harassment beginning on his first day of work when Caucasian employee Edwin Gallam allegedly asked Plaintiff, "what do n*****s have in common with decaffeinated coffee? Neither of them work." (Fazekas Dep. 49, 80) Plaintiff states that Mr. Gallam and four other Caucasian Gregory Trucking employees, Kenneth Hemminger, Reed Abel, David Lowery, and Daniel Rudlowski, continually addressed racial slurs such as "n*****," "boy" and "monkey" at him throughout his employment. (Fazekas Dep. 101, 105-108). As a result of the racial slurs and taunting, Plaintiff asserts that he felt physically threatened at work and suffered insomnia, anxiety, and sleeplessness at night. (Id. at 124-125).

Plaintiff states that he met with Mr. John Gregory, the owner of Gregory Trucking, in the yard outside of the administrative office to report the racial harassment in June 2015. While he was complaining about the harassment, Plaintiff contends that Mr. Hemminger walked by them and called Plaintiff a n******–specifically saying "This N*****'s lying." (Fazekas Dep. 82, 87). In response, Mr. Gregory allegedly responded by asking Plaintiff what he wanted him to do about it and Plaintiff replied he should take disciplinary action against the perpetrators. (Id. at 87) Mr.

---

[2]

Defendant seems to dispute Plaintiff's race, pointing to the affidavit of Reid Abel, a Gregory Trucking employee during 2015 who claims that he was unaware that Mr. Fazekas was a black man. See R. Abel Dep. ¶2)

2

Gregory recalled talking with Plaintiff while walking through the yard about a problem Plaintiff was having where Mr. Gregory told Plaintiff that "the best thing to do is let it go in one ear and out the other." (Gregory Dep. at 68). Plaintiff states that he frequently reported the racially hostile work environment to Mr. Gregory after the June 15, 2015 meeting but Mr. Gregory took no action to address the problem or veered away from him when he saw him approach. (Fazekas Dep. 126). The employees who allegedly made the racially disparaging comments have submitted affidavits stating that they made no racial slurs toward Plaintiff.[3] (See Depositions of Ed Gallum, Reid Abel, Kenneth Hemminger, and Daniel Rudlowski, ECF #25 Exs. 5-8) Mr. Gregory states that Mr. Fazekas never reported to him that he was subjected to a hostile work environment because of his race. (Gregory Aff. ¶ 16)[4]

In November 2015, Plaintiff states that he discovered his truck parked beside a black baby doll with a noose around its neck hanging from the fuel tank in the Gregory Trucking yard. (Fazekas Dep. 89) Plaintiff asserts that he took a photo of the doll and showed it to Mr. Gregory in his office and asked him what it was about? Plaintiff states that Mr. Gregory refused to look at the picture and Plaintiff allegedly told him that this is a big issue for an African-American. When Mr. Gregory refused to listen, Plaintiff left the office. (Id. 90). Mr. Gregory denies that Plaintiff ever complained to him about the doll. (Gregory Aff. ¶ 15)

The doll, swan and noose were allegedly hung on the fuel tank at Gregory Trucking by

---

[3]

David Lowery, one of the employees who allegedly addressed racial slurs to Plaintiff died on October 18, 2015. (Ennes Dep. ¶ 10)

[4]

In his deposition, Mr. Gregory seems to say that only a meeting in his office would constitute a "report" in his mind. See Gregory Dep. 74-75)

3

Robert Cortez, an independent contractor working with Gregory Trucking, before Plaintiff was hired by Gregory Trucking. (Cortez Aff. ¶ 5) Mr. Cortez states that he hung the doll as a gag on two former white truck drivers and not in reference to Plaintiff. (Id. ¶10).[5] Although Office Manager Karen Ennes stated that Mr. Gregory would access the fuel pumps twice per month, Mr. Gregory denies ever seeing the hanging doll and swan, despite his regular trips to the fuel tank. (Ennes. Dep 56; Gregory Dep. 36-37). The hanging doll was removed by Mr. Cortez at some point after Plaintiff was laid off or terminated.

Defendant contends that Plaintiff was terminated because he was a poor employee, in that he received a written disciplinary notice for failing to complete and deliver job related paperwork, failed to follow company policy regarding utilization of two-way radios, and missed work on at least eight days. Mr. Gregory contends that Plaintiff's "color" was not part of his decision not to recall Plaintiff and to terminate Plaintiff's employment. (Gregory Aff. ¶¶ 10-13) Plaintiff filed his charge of discrimination with the EEOC on May 4, 2016, and received a right to sue letter. (ECF #26 Ex.9; Compl. ¶ 32))[6]

---

[5] A black and white copy of the photo of the doll and swan hanging in a noose was included in the parties' filings. Defendant claims the doll was white and Plaintiff claims the doll is black. The race of the doll could not be determined from the black and white photo. Regardless of race, Plaintiff asserts that as an African American he was disturbed by the hanging doll, which conjured images of lynchings.

[6] On July 25, 2018, more than a year following the commencement of this action, the EEOC issued a Notice of right to sue (Conciliation Failure) letter which stated in relevant part that "the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you." The notice further explained that the EEOC had decided not to bring suit against the Respondent at this time. (ECF # 36)

# STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most

civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

Defendant asserts that it is entitled to summary judgment on all of Plaintiff's federal and state discrimination claims.[7]

---

[7]

In Ohio, courts use federal law to analyze race discrimination claims under the Ohio Revised Code §4112. *See Carter v. University of Toledo*, 349 F.3d 269, 272 (6th Cir.2003)(Title VII employment discrimination claim and state law employment discrimination claim under §4112 considered together under Title VII framework because

6

A.  Hostile Work Environment

Defendant argues that Plaintiff has not demonstrated hostile work environment discrimination. In order to demonstrate a prima facie case of hostile work environment race discrimination under both Title VII and the Ohio Civil Rights Act, plaintiff must prove the following:

> (1) he is a member of a protected class; (2) he was subjected to unwelcomed racial harassment; (3) the harassment was based on his race; (4) the harassment unreasonably interfered with his work performance and created a hostile work environment; and (5) the employer 'knew or should have known of the charged racial harassment and failed to implement prompt and appropriate corrective action.'

*See Blankenship v. Park Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)(citation omitted).

Moreover, to create a cognizable claim of hostile work environment racial harassment, the alleged harassing actions must be sufficiently severe or pervasive to alter the conditions of the Plaintiffs' employment and create an abusive working environment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S. Ct. 2257, 2264 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Furthermore, the objectionable environment must be both objectively and subjectively offensive: one that a reasonable person would find hostile or abusive and one that the Plaintiffs did, in fact, perceive to be hostile or abusive. *Faragher v. Boca Raton*, 524 U.S. 775, 788-89, 118 S.Ct. 2275, 2283 (1998) *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The hostile work environment must be determined by

---

Ohio's requirements are the same as under federal law.); *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). Accordingly, Plaintiff's federal and state law race, hostile work environment and retaliation discrimination claims will be analyzed under federal law.

looking at the totality of the circumstances, including the following: the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee's work performance. *Harris, supra* at 23.

Defendant argues that Plaintiff has not established the first element of the prima facie case. Plaintiff has testified that he is African-American. In addition to African, Plaintiff also has Hungarian and Italian in his ancestry. (Fazekas Dep. 67). Apparently, as a result of this "mixed" heritage, Defendant asserts that Plaintiff has not established that he is a member of a protected class. Defendant also submits the affidavit testimony of one of its employees, Reid Abel, that Mr. Fazekas does not appear to be a person of color. (Reid Aff.¶2) From the filings submitted to the Court in this proceeding, it is clear that Plaintiff identifies as African-American, and in these cases, absent definitive proof to the contrary, the Court will accept Plaintiff's testimony regarding his race for the purpose of establishing a prima facie case. At least, the issue of Plaintiff's racial identity is a question of fact for a jury.

Defendant also asserts that Plaintiff fails to establish the second and third and fifth elements of the prima facie case because Plaintiff's accounts of the racially disparaging remarks made to him by Defendant's employees are false because they are not corroborated, and the Gregory Trucking employees who are alleged to have made the remarks deny making them. Further, the owner of Gregory Trucking, John Gregory denies that Plaintiff complained to him about racial harassment. Mr. Gregory also denies ever personally hearing any of the racial slurs or seeing the hanging doll. There is a clear question of fact regarding whether the racial slurs were made and reported to Mr. Gregory, however the fact that it is Plaintiff's uncorroborated

testimony against the affidavit testimony of the five employees and Mr. Gregory does not entitle Defendant to summary judgment. The Court may not weigh evidence or make credibility determinations on a motion for summary judgment. *See Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, 2016 WL 2927983 at *10 (M.D. Tenn. May 19, 2016) (Plaintiff's unsubstantiated testimony sufficient to defeat summary judgment because in the context of a motion for summary judgment "it must be assumed that, as the [plaintiff] testified, the word[s] were used.")

Finally, Defendant argues that the alleged harassment did not unreasonably interfere with Plaintiff's work performance by creating an environment that was intimidating, hostile or offensive. The alleged conduct, repeated taunts of n*****, boy and monkey and racially derogative jokes and a black (or dirty white) doll hanging by a rope around its neck, is objectively offensive and Plaintiff testified that he was offended by it. Courts have found that "the use of the word 'nigger,' even taken in isolation, is not a 'mere offensive utterance.'" *Id.* at *11, citing *Johnson v. United Parcel Serv., Inc.*, 117 Fed. Appx. 444, 455 (6th Cir. 2004). In this case the Plaintiff states that the racial slurs were frequent. While Plaintiff testified that he did not allow the harassment to affect him at work, it did give him insomnia and anxiety. Further, Plaintiff testified that he felt physically threatened at work by the racial slurs. (Fazekas Dep 124-126). Plaintiff's testimony regarding the frequency of the alleged racial slurs and their level of offense and Plaintiff's fear of physical threat, could reasonably support a jury finding that Plaintiff was subjected to a hostile work environment. Because the evidence submitted by the parties presents "presents a sufficient disagreement to require submission to a jury," Defendant's motion for summary judgment on Plaintiff's claim of hostile work environment is denied. *See*

*Anderson*, 477 U.S. 242, 251-52.

### B. Race Discrimination

Title VII and Ohio Rev. Code § 4112 prohibit employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000e. "It is well established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citations omitted). A plaintiff may establish a claim of race discrimination in one of two ways--via indirect or direct evidence. First, a plaintiff may establish a *prima facie* case of discrimination by showing that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and, (4) he was replaced by a person outside the class. *Id; Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). If a plaintiff's claim is that a similarly situated non-minority was treated more favorably, the fourth prong of the test is altered, *i.e.*, "a plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that 'a comparable non-protected person was treated better'." *Mitchell*, 964 F.2d at 582; *Talley*, 61 F.3d at 1246. Second, a plaintiff may alternatively establish her case "by presenting credible, direct evidence of discriminatory intent." *Mitchell*, 964 F.2d at 582 n.4.

In the absence of direct evidence, the court applies the familiar burden-shifting approach for inferential proof of discrimination set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). While the burden of persuasion remains with the plaintiff, the burden of production shifts between the parties. The Sixth Circuit has described this approach as follows: "(1) the plaintiff must establish a prima facie case of racial discrimination; (2) the employer must articulate some legitimate,

nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual." *Harrison v. Metropolitan Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1115 (6th Cir. 1996). In establishing pretext, the plaintiff "may succeed . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. However, in order to withstand summary judgment, a plaintiff must come forward with evidence demonstrating that the defendant's articulated nondiscriminatory justification is not true. *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996), *amended on denial of reh'g*, 97 F.3d 833 (6th Cir. 1996); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence (1) that defendant's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) the reasons were insufficient to motivate the adverse action. *Manzer*, 29 F.3d at 1082.

Defendant contends that Plaintiff has not establish the first and fourth elements of the prima facie case. For the reasons discussed above, the Court will accept the Plaintiff's testimony that he is African-American and thus a member of a protected class for the purpose of establishing his prima facie case.

With respect to the fourth element, Defendant asserts that there is no evidence that Plaintiff was replaced by a person outside of a protected class or that a comparable or similarly situated person outside of a protected class was treated more favorably than Plaintiff. Plaintiff asserts that Mr. Gregory testified in his deposition that white truck driver Ed Gallam, one of the

11

employees who Plaintiff alleges made racial slurs toward him, had several disciplinary problems, absences and drama, similar to Plaintiff, and was not terminated for his actions. Plaintiff also testified that Mr. Hemminger and Mr. Rudlowski had worse attendance reports than Plaintiff but were still employed by Gregory Trucking. (Fazekas Dep. 48).

Defendant asserts that Mr. Hemminger, Mr. Gallam and Mr. Rudlowski are not similarly situated to Plaintiff and thus are not comparable to fulfill the fourth element of the prima facie case. While Defendant concedes that Mr. Gallam had disciplinary problems and was not terminated by Gregory Trucking, he was not "similarly situated" to Plaintiff because he was not laid off during the 2015-2016 seasonal layoff. Similarly, Mr. Hemminger was also not laid off during the 2015-2016 seasonal layoff. While Defendant refers to the affidavit of Karen Ennes to support its statement that Mr. Gallam and Mr. Hemminger were not laid off during the 2015-2016 seasonal layoff, neither Mr. Gallam nor Mr. Hemminger is mentioned in the affidavit. The affidavit names several men who were laid off and re-hired but does not state that the list is complete. Further, Mr. Gregory testified that Mr. Gallam resigned from Gregory Trucking to take a new job, perhaps explaining why he was not mentioned in Ms. Ennes' affidavit. Further, there is no explanation or evidence concerning why certain men—mainly the men Plaintiff accused of participating in the harassing conduct, were not laid off while many others were. There is no identification of a different job category or class. Ms. Ennes Affidavit does state that Mr. Rudlowski is a mechanic, not a truck driver, explaining why he is not comparable to Plaintiff. Defendant's submitted evidence raises questions of fact regarding the similarity of Plaintiff's job position to that of other truck drivers. As a result the Court finds that the evidence submitted by Plaintiff is sufficient to establish the fourth element of his prima facia case of race

discrimination.

Defendant has submitted a non-discriminatory reason for Plaintiff's termination. Mr. Gregory explains that Plaintiff was terminated because he was a poor employee. In his approximately 7 months of employment with Gregory Trucking, Plaintiff missed approximately 8 days of work. Further, a customer of Gregory Trucking asked that Plaintiff not return to the customer's job site. Plaintiff received a written disciplinary notice for failing to deliver job-related paperwork to the company and he failed to follow company policy by not utilizing the two-way radio in his assigned truck when he removed himself from service. Plaintiff was informed in writing to use the radio. (Gregory Aff. ¶¶ 10-13)

Plaintiff asserts that Defendant's reasons for terminating Plaintiff are pre-textual and have no basis in fact because, with respect to the customer complaint, he believes he was protecting Gregory Trucking and his commercial drivers license by not letting the complaining customer overload his truck with dirt. He further contends that Plaintiff's attendance records maintained by Defendant are riddled with inaccuracies. The only evidence in support of Plaintiff's claims of pretext is once again his deposition testimony. In his deposition Plaintiff reviews the attendance records kept by Gregory Trucking and disputes the entries which relate to an absence for a child's birthday because the dates marked are not the birth dates of his two children. He also states that an entry for "kid sick" or "mom sick" are inaccurate. Plaintiff could not recall the other dates on which he was marked absent. (Fazekas Dep 36-39) Ultimately, whether the Defendant's reasons for terminating Plaintiff were pretextual depends on whose version of the events is credited. As such, this is a question of fact for the jury.

### 3. Retaliation

Plaintiff asserts claims of retaliation under Title VII and § 4112. Ohio Revised Code § 4112.02(I) and Title VII prohibit retaliatory actions against employees who oppose, report, or participate in investigations involving conduct that allegedly violates those statutes. *See Sessin v. Thistledown Racetrack, LLD,* 187 F.Supp.3d 869, 878 (N.D. Ohio 2016). "Retaliation claims are treated the same whether brought under the ADA or Title VII or § 4112." *Barrett v. Lucent Techs., Inc.,* 36 Fed.Appx. 835, 840 (6th Cir.2002) (citing *Penny v. UPS,* 128 F.3d 408, 415 (6th Cir.1997)); *Sessin,* 187 F.Supp.3d at 878. "The anitretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006).

In cases where a plaintiff relies on circumstantial evidence of retaliation, the *McDonnell Douglas* burden shifting framework applies. *Rorrer v. City of Stow,* 743 F.3d 1025, 1046 (6th Cir. 2014). To establish a *prima facie* case for retaliation a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the activity was known to the employer; (3) thereafter the defendant took "materially adverse" actions against the plaintiff; and (4) the protected conduct was a but-for cause of the adverse action. *Goodsite v. Norfolk Southern Ry. Co.,* 573 Fed. Appx. 572, 582 (6th Cir. 2014); *see also University of Texas of Southwestern Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013). Once the Plaintiff makes this showing of the prima facie case, the defendant must articulate a legitimate nonretaliatory reason for its action before the burden of production shifts back to plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation. The burden of persuasion remains with the plaintiff throughout. *Harris v. Metro. Gov't of Nashville & Davidson Cty.,* 594 F.3d 476, 585 (6th Cir. 2010).

14

Here Plaintiff asserts that he has established the first three elements in that he complained frequently to Mr. Gregory about the racial harassment and hostile work environment, thus Mr. Gregory knew about the complaints and shortly thereafter he was terminated which is a materially adverse action. Plaintiff concedes that a question of material fact exists as to the fourth element of the prima facie case--causation, but contends that a jury could infer causation based on the sequence of events and suspicious timing. Based upon the evidence in this case, the truth about causation will depend upon which side you believe. Accordingly, this is a question for the jury.

The same non-discriminatory reasons for termination and the same arguments regarding pretext were advanced by the parties on the retaliation claim. As in the race discrimination claim, these issues raise genuine questions of material fact requiring denial of summary judgment.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF #25) is denied. Trial remains set for December 12, 2018 at 8:30 a.m.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: August 28, 2018